WINTERS v. MILLER ET AL.

[Cite as Winters v. Miller (1970), 23 Ohio Misc. 73.]

(No. 52587—Decided January 27, 1970.)

Common Pleas Court of Scioto County.

*Mr. W. L. Howland,* for plaintiff.
*Mr. Raymond T. Switalski,* for defendants.

MARSHALL, J. The plaintiff instituted these proceedings against her daughter and son-in-law, alleging that she had conveyed to her daughter on July 23, 1968, an undivided one-half interest in the real estate known as No. 1236 Bonser Avenue, Portsmouth, Ohio, title to the other undivided one-half interest having been previously acquired and then owned by the daughter. Contemporaneously therewith plaintiff and her daughter executed a written instrument providing that should the daughter "at anytime here-

after decide to marry, she does covenant and agree that she will, in consideration of the aforementioned conveyance between said Virginia Lee Bussler to her, at some time before any marriage contract is entered into between Joyce Marie Bussler and another, reconvey to the said Virginia Lee Bussler * * *'' the undivided one-half interest in said property.

On the 9th day of August, 1968, the daughter married the defendant, Albert Miller, Jr.; and on the 1st day of July, 1969, the daughter conveyed the entire interest in said real property to her husband, who was nineteen years of age. The prayer of the petition is that title to an undivided one-half interest in said premises be revested in the plaintiff, and that, thereafter, the court make partition of said property.

The defendants have demurred to the petition on the following grounds:

1. That it appears on the face of the petition that the contract referred to between plaintiff and defendant is void as being contrary to public policy.

2. That it appears on the face of the petition that plaintiff does not state facts which show a cause of action for a partition of the premises.

3. That plaintiff does not state facts which constitute a cause of action against Albert Miller, Jr.

The concept that restraints on marriage, whether by testamentary disposition, conveyance, or contract, should be nullified first appeared in the early civil law of Rome, and reflected a desire to increase the population to supply the vast military requirements of that bellicose nation. In England it was feared that such restraints might promote licentiousness; and in this country the moral factor was considered significant, as well as the social benefit to be gained by encouraging and preserving the freedom of choice of a spouse. VI American Law of Property, Chapter III.

Whatever the reason, "it is the universally accepted general rule, which no court as yet has definitely repudiated, that a condition which is in total or absolute restraint

of marriage, or which is broad and general in such restraint, is void and will not be permitted to operate so as to divest an estate which has already vested, at least, as applied to males and unmarried women." 35 American Jurisprudence 354.

Our research has produced only two reported cases in Ohio bearing upon this subject. The sole pronouncement by the Supreme Court is in the case of *King* v. *King* (1900), 63 Ohio St. 363. There, the plaintiff had entered into a contract with James Howland, whereby she agreed to live with him and take care of him during his life; that she would refrain from marriage while he lived; and he, in consideration thereof, agreed to provide for her "amply sufficient to make her comfortable and well off." The plaintiff did not marry and performed the contract on her part, but Howland reneged. Plaintiff sued his estate and recovered a judgment compensating her for personal services rendered in the performance of the contract. That judgment was attacked on appeal on the ground that the contract, being in restraint of marriage, was void and no rights could be enforced thereunder. The court held "That contracts in restraint of marriage are void, as being contrary to the public policy of the law, is conceded." The judgment was affirmed, however, for the reason that the court stated that the promise not to marry, although void, was but an incident to the main contract which was for labor and care, and since those services were fully performed, the plaintiff had the right to recover. The promise of Howland to provide for the plaintiff was supported by two separate considerations: One, the promise to perform the services agreed upon, and the other not to marry during the continuance of such service. "The first was a valid promise and of itself sufficient to support the promise of the other party; the second was a void promise, not affording any consideration whatever." *King* v. *King, supra,* at page 369.

The only other published case is that of *Saslow* v. *Saslow* (1957), 104 Ohio App. 157, decided by the Court of Appeals for Montgomery County. That was a divorce case,

and the parties had entered into a separation agreement, later incorporated into the court decree, whereby the plaintiff wife, who was awarded the divorce and custody of the two minor children, received certain real estate by way of alimony upon the following condition:

"Said wife agrees not to marry for a period of three years, however, if she does, then she shall execute a warranty deed to a trustee for a one-third interest in the real estate to each of the two children for their use and benefit; in the event she does not marry after the expiration of the three-year period, she shall have full control of said real estate."

The plaintiff remarried within the three-year period, and she was found guilty of contempt for refusing to make the conveyance as stipulated in the agreement. The court stated (page 159):

"This provision is phrased as a restraint on the right of the appellant to remarry. The general rule is that a contract which is a general restraint against marriage is against public policy and void."

The court, referring to the treatise on the subject in American Jurisprudence, *supra*, noted that "numerous refinements and subtle distinctions" have been engrafted upon the general rule "respecting partial and absolute restraints, real and personal estate, conditions precedent and conditions subsequent, gifts with or without valid limitations over, partial or total forfeiture of estate, etc." The court found that the restraint at issue was for a limited time involving only a partial forfeiture of estate, and held that in this instance the restraint was reasonable and valid. It actually based its decision, however, on an almost universally recognized exception that the general rule does not apply to a restraint against *remarriage* by a woman. 35 American Jurisprudence 363: VI American Law of Property, Section 27.13; 122 A. L. R. 33.

It appears, therefore, that the only judicial precedents in Ohio recognize the general rule, but do not involve its application. The instant case indubitably falls squarely within the rule. It unequivocally compels a total forfeiture

of the entire estate conveyed in the event that the grantee should at any time decide to marry anybody, and thus can not be brought within any of the exceptions previously noted.

Despite the fact that the general rule has not been repudiated, the courts have historically engaged in verbal acrobatics to avoid its consequences, and have contrived to exclude numerous factual situations from its operation. One method has been to hold that where a gift is limited until marriage, instead of being forfeited upon the donee's marriage, it is not void. This is, of course, a purely semantical whimsey. A more realistic approach appears in those cases in which the courts have held that where the object of the donor is to provide support for daughters while they are unmarried, public policy is not contravened. 35 American Jurisprudence 362. This has been regarded as a reasonable restraint because a parent might wish to provide for a daughter until her marriage, and such provision would no longer be necessary in the event of her marriage. 122 A. L. R. 45. This is the position taken by the American Law Institute in 4 Restatement of The Law of Property, Section 424, which states:

"An otherwise effective condition precedent, special limitation, condition subsequent or executory limitation which is designed to prevent the acquisition or retention of an interest in land or in things other than land in the event of any first marriage is invalid, unless the dominant motive of the conveyor is to provide support until such marriage, in which case the restraint is valid."

In the absence of any direct authority, this court is of the opinion that the foregoing rule is sound and should be adopted. In this view, the issue to be resolved in each case is the dominant intention of the one imposing the restraint. Since the instant contract is silent with respect to this matter, it will be necessary to permit the introduction of evidence to estatblish the existence or absence of such intent.

Branch 1 of the demurrer is overruled.

Section 5307.01, Revised Code, confers and limits the

right and duty to partition, or suffer partition of, land to tenants in common and coparceners of any estate therein. It is manifest from the allegations of the petition that the plaintiff, not having a present interest in the premises which are the subject of this action, is not entitled to partition. The court, however, elects to treat Branch 2 of the demurrer as a motion to strike, and it is, therefore, ordered that this portion of the prayer (which prayer is, of course, not a part of the petition) be deleted and removed from further consideration.

If the facts stated in the petition constitute a cause of action against the defendant, Joyce Marie Bussler Miller, then a cause of action is stated as against her husband, the defendant Albert Miller, Jr. There is no principle of equity or law known to this court which would permit the defendant daughter to subvert a legal right of the plaintiff by the subterfuge of a conveyance to her husband.

*Judgment accordingly.*